United States District Court
Southern District of Texas
**ENTERED**
August 19, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ON SITE CONTAINER & COMPACTOR REPAIR, INC., §§§§§ Plaintiff. | |
| VS. § | CIVIL ACTION NO. 4:20-cv-03394 |
| BFI WASTE SERVICES OF TEXAS, LP, §§§§§ Defendant. | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is BFI Waste Services of Texas, L.P.'s Motion to Dismiss ("Motion to Dismiss"). *See* Dkt. 9. Having considered the motion, the response, the reply, and the applicable law, I recommend that the motion be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff's First Amended Original Complaint ("Amended Complaint") tells a sordid tale of kickbacks, overbilling, theft, and violations of federal health and safety regulations. In this background section, I highlight only those allegations that relate directly to the Motion to Dismiss.

BFI Waste Services of Texas, L.P. ("BFI") is a waste management provider, responsible for collecting, recycling, and disposing of Houston area waste. On Site Container & Compactor Repair, Inc. ("On Site") repairs waste containers for waste management companies like BFI.

On Site and BFI began working together around 1997. In 2012, BFI asked On Site to make a written proposal to handle its container maintenance and repair work. On Site provided such a proposal. A short time later, BFI became On Site's largest client, accounting for approximately $30,000 per week in revenue. The

Amended Complaint does not allege that there was a formal contractual relationship between On Site and BFI.

The business relationship between On Site and BFI thrived until January 2015, when BFI assigned William "Jocko" Hayes ("Hayes") to oversee its operations. According to On Site, Hayes engaged in a wide range of illegal and unethical conduct. In the summer of 2016, for example, On Site alleges that Hayes asked for kickbacks in the amount of $6,000 to $7,000 per week. Hayes reportedly told On Site to overbill BFI so the company could afford to pay the bribes. When On Site refused to participate in the cash kickback scheme, Hayes allegedly pulled work from On Site, causing the company's revenues to plummet.

In January 2017, On Site's owner and founder, Roy Gunter ("Gunter"), finally had enough and complained to BFI management about Hayes's conduct. After learning about Hayes's alleged misconduct, BFI initiated an internal investigation. A few weeks later, in February 2017, two members of BFI's human resources team met with Gunter to convey the findings of that investigation. The Amended Complaint asserts that the BFI employees "represented to On Site that BFI had performed a proper and adequate investigation into On Site's complaints about Jocko Hayes." Dkt. 8 at 6. The Amended Complaint also alleges that the two BFI human resources employees "represented to On Site that BFI would remove Hayes as supervisor over On Site's work." *Id. See also id.* at 4 (BFI representatives "told Gunter BFI would reassign Hayes to another location so Hayes would no longer have any interaction with On Site and Gunter."). On Site now alleges that both these statements were false.

In the immediate aftermath of his meeting with BFI's human resources representatives, Gunter felt relieved that BFI had satisfactorily addressed his concerns.

> Unfortunately, Gunter's satisfaction was short-lived. It quickly faded when he returned to work in mid-February 2017 to find Hayes in the same position he was before. Bewildered, Gunter contacted Hayes' supervisor, William Norman, for an explanation. Gunter continued

2

> working, however, hoping that BFI would be true to its word, but he never received anything resembling an explanation for BFI's about face on Hayes. Rather, based on its actions, BFI seemed to ratify and approved of Hayes' behavior, which was disheartening for Gunter to say the least.

*Id.*

Through the spring and early summer of 2017, Hayes continued to oversee BFI's business relationship with On Site. During this time, On Site complained that BFI did not compensate it for the work it performed. In particular, BFI allegedly required On Site to make substantial modifications—such as cuts and bends—to repair BFI's material without compensation. In On Site's words, "BFI knew or should have known that On Site expected compensation when BFI accepted the services and materials, especially in light of On Site's repeated requests to be paid for the services and materials." *Id.* at 5.

In June 2017, BFI stopped sending work to On Site, effectively terminating the business relationship between the two entities.

On Site's lawsuit alleges two causes of action: (1) fraud; and (2) quantum meruit. BFI seeks to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) provides that a district court must dismiss a complaint that fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). To survive dismissal at this early stage, the complaint must state enough facts such that the claim to relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads enough facts to allow the district court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of

3

action will not do." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, I must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017).

## ANALYSIS

### A.   FRAUD

Under Texas law, On Site must allege the following elements to maintain a fraud claim: (1) BFI made a material representation; (2) the representation was false; (3) BFI knew the representation was false when made or made the representation recklessly without knowledge of its truth; (4) BFI intended to induce On Site to act upon the representation; (5) On Site acted in reliance upon the representation; and (6) On Site suffered injury. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Fraud allegations also bear a heightened pleading standard: a party must state with particularity the circumstances constituting fraud. *See* FED. R. CIV. P. 9(b). This means that the party alleging fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). In short, Rule 9(b) requires that a complaint detail "the who, what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up). The Fifth Circuit has mandated that Rule 9(b)'s heightened pleading standard be applied with "bite" and "without apology." *Williams*, 112 F.3d at 178.

As noted above, On Site alleges that BFI made two fraudulent statements: (1) "that BFI had performed a proper and adequate investigation into On Site's complaints about Jocko Hayes"; and (2) "that BFI would remove Hayes as supervisor over On Site's work." Dkt. 8 at 6.

The first statement unquestionably fails to meet Rule 9(b)'s heightened pleading requirement. Other than the bold assertion that BFI's representatives lied when they said that the company had conducted "a proper and adequate investigation into On Site's complaints," there is no explanation or discussion as to why that statement is false. *Id.* What was improper about BFI's investigation? What was inadequate about the company's investigation? After reading the Amended Complaint, I am left to speculate about the inadequacy of BFI's internal investigation. There is simply no meat on the bone. This is exactly the kind of hollow, meritless statement that Rule 9(b) was intended to weed out at the pleading stage. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

The second statement—"that BFI would remove Hayes as supervisor over On Site's work"—fails for lack of reliance. The reliance element of a fraud claim has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable. *See Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2010). As far as justifiable reliance is concerned, a party "may not justifiably rely on a misrepresentation if there are red flags indicating such reliance is unwarranted." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 655 (Tex. 2018) (quotations omitted). Justifiable reliance "can be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Id.* at 654.

On Site claims that it continued to work for BFI because it relied on BFI's representation that it would remove Hayes. However, On Site expressly admits in its Amended Complaint that it knew by mid-February 2017—shortly after the alleged statement was made—that BFI had not removed Hayes from his position. This acknowledgement makes implausible the allegation that On Site justifiably relied on the representation in deciding to continue to work for BFI. As a legal matter, a party cannot justifiably rely on a representation when that party has actual knowledge of that representation's falsity. *See JSC Neftegas-Impex v.*

*Citibank, N.A.*, 365 S.W.3d 387, 407–09 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Although BFI had actual knowledge of the representation's falsity (that is, that BFI was not going to remove Hayes), the Amended Complaint asserts that On Site continued working with BFI "hoping that it would make good on its promise to reassign Hayes." Dkt. 8 at 4. This admission is fatal to On Site's fraud claim. On Site cannot satisfy the "justifiable reliance" element as a matter of law on some misplaced hope that BFI would, one day in the future, reassign Hayes to a new position. *See Camden Mach. & Tool, Inc. v. Cascade Co.,* 870 S.W.2d 304, 311 (Tex. App.—Fort Worth 1993, no writ) (explaining that once a party learns of a statement's falsity, it cannot as a matter of law, rely on the statement); *Coastal Corp. v. Atl. Richfield Co.*, 852 S.W.2d 714, 721 (Tex. App.—Corpus Christi 1993, no writ) (holding after discovery of fraud, there can be no further reliance). The United States Supreme Court has held that a fraud plaintiff "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans,* 516 U.S. 59, 71 (1995) (quotation omitted). The situation here is even more glaring. To allow On Site to continue with a fraud claim when it was fully aware of facts that made the representation false would render the "justifiable reliance" element of a fraud claim meaningless. I am unwilling to go there. The second alleged fraudulent statement must be dismissed for failure to allege justifiable reliance. *See W & L Ventures, Inc. v. E. W. Bank*, No. H-13-00754, 2014 WL 1248157, at *9 (S.D. Tex. Mar. 26, 2014) (dismissing fraud claim on a motion to dismiss for failure to plead justifiable reliance).

There is one additional reason that On Site's fraud claim fails at the pleading stage. On Site has failed to plead damages with sufficient particularity. *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (a plaintiff must plead actual damages arising from his reliance on a fraudulent statement). A plaintiff obviously does not have to prove the actual damages to withstand a motion

to dismiss, but the plaintiff is required to suitably describe its allegations of damages. *See Mason v. F.D.I.C.*, 888 F. Supp. 799, 807 (S.D. Tex. 1995). A bare bones assertion that On Site suffered damages is nothing more than "a formulaic recitation of the elements of a cause of action [that] will not do." *Twombly*, 550 U.S. at 555. On Site's sole damages allegation is that "BFI's false representations directly and proximately caused injury to On Site, resulting in damages." Dkt. 8 at 6. This is wholly insufficient to survive a Rule 12(b)(6) motion. On Site must do more, such as explaining how it incurred damages in reliance on the alleged fraudulent statement. On Site's failure to sufficiently allege damages provides an independent reason for recommending dismissal of the fraud claim.

### B.   QUANTUM MERUIT

On Site also seeks recovery under a quantum meruit theory, alleging that BFI "gladly accepted" its valuable services and materials, without providing proper compensation. Dkt. 8 at 5.

A quantum meruit claim is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (quotation omitted). "The purpose of this common law doctrine is to prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (cleaned up). To recover under quantum meruit, a claimant must prove that:

> 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Vortt Explor. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).

At this early stage in the proceedings, it is not my job to determine whether On Site's quantum meruit claim is true or not. I am simply tasked with deciding

whether the Amended Complaint properly states a claim for quantum meruit so that On Site may proceed through the discovery process. The Amended Complaint touches each of the elements required to state a quantum meruit claim: (1) "On Site provided . . . services and materials"; (2) to BFI; (3) BFI "accepted these services and materials"; and (4) On Site made "repeated requests [to BFI] to be paid for the services and materials" and "BFI knew or should have known that On Site expected compensation when BFI accepted the services and materials." Dkt. 8 at 5. From my vantage point, On Site has done enough to satisfy its pleading burden, especially because I am required to view the facts alleged in the Amended Complaint in the light most favorable to On Site. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

BFI argues that On Site's quantum meruit allegations are inadequate because On Site "does not allege how the work was assigned, invoiced, or paid." Dkt. 9 at 7. Such factual allegations might be helpful to shed light on the circumstances surrounding On Site's claim that it performed work for which it was not compensated, but they are certainly not required. "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation omitted). On Site's quantum meruit allegations easily satisfy this test.

Finally, BFI contends that the quantum meruit claim should be dismissed because On Site pleads no facts regarding the manner under which the alleged work was performed. In BFI's view, this is important because a party generally cannot recover under quantum meruit where there is a valid contract covering the services or materials furnished. *See In re Kellogg Brown & Root*, 166 S.W.3d at 740. While it is certainly true that the existence of a written contract covering the services or materials at issue would preclude a quantum meruit claim under Texas law, the Amended Complaint does not assert a claim for breach of contract or

contain any allegations that a contract existed between BFI and On Site. It is premature to throw out the quantum meruit claim on the mere possibility that there might be a written agreement which bars a quantum meruit cause of action. Because I find that On Site has sufficiently pled the necessary elements of a quantum meruit claim at this juncture in the case, the quantum meruit claim should survive BFI's Rule 12(b)(6) challenge.

## CONCLUSION

For the reasons explained above, I recommend that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part. On Site's fraud cause of action should be dismissed, and its quantum meruit claim should proceed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 19th day of August 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE